IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LARRY CALDWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06-CV-0207-WKW-CSC |
| ) | |
| ANTHONY CLARK, MILLARD H. ) | |
| McWHORTER & ANNETTE CAIN, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' SPECIAL REPORT AND ANSWER

Defendants, Millard H. McWhorter ("Dr. McWhorter") and Annette Cain ("Nurse Cain") submit their Special Report and Answer to the Court as follows:

### I.   INTRODUCTION

The plaintiff filed his Complaint on March 3, 2006. On March 8, 2006, this Court ordered Defendants to submit a Special Report concerning the factual allegations made by the plaintiff in his Complaint.

### II.   PLAINTIFF'S ALLEGATIONS

The plaintiff alleges that the Defendants failed to provide adequate or appropriate medical attention in violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges that Dr. McWhorter and Nurse Cain denied the plaintiff proper medical care by failing to treat Plaintiff's complaints of problems with his right eye.[1]

---

[1] This statement of the plaintiff's allegations is based upon the plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendants an opportunity to answer and address those issues.

### III. DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the plaintiff as said allegations are untrue and completely without basis in law or fact. Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled. The plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, the plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the law.

### IV. SWORN STATEMENTS

Pursuant to Paragraph 2 of the Court's Order, Defendants submit the affidavits of Dr. McWhorter (Exhibit 1) and Nurse Cain (Exhibit 2), who are persons having knowledge of the subject matter of the Complaint. Defendants also refer the Court to the affidavit of Sheriff Anthony Clark, which is attached as Exhibit B to Co-Defendants' Special Report.

### V. STATEMENT OF FACTS

#### A. Background

1. Dr. McWhorter has been licensed to practice medicine in the State of Alabama since 1986. From January 1994 to July 1999, he was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, he was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, he has been employed by Southern Health Partners, Inc. ("SHP") as the medical director of the Covington County Jail in Andalusia, Alabama. (McWhorter Aff. at ¶¶ 2-3.)

2.	Nurse Cain is a licensed practical nurse. She obtained her L.P.N. degree in 1982 from McArthur State College in Opp, Alabama, and became licensed by the State of Alabama as an L.P.N. in 1982. From 1982 to 1985, she worked as an L.P.N. on the emergency room and surgery departments of Columbia General Hospital in Andalusia, Alabama. From 1985 to 1986, she worked as an L.P.N. for Dr. Joseph Herrod in Enterprise, Alabama, where her nursing care focused on behavioral malfunction. From 1986 to 1988, she was an L.P.N. at Opp nursing facility. From 1988 to 1990, she was an L.P.N. for Dr. Steven Price in Opp, Alabama, who had a private surgery practice. From 1990 to 1992, she was an L.P.N. at Oxford Home Health Care in Oxford, Alabama. From 1992 to 2005, she was an L.P.N. at Andalusia Manor Nursing Home. From September 2005 to the present, she has been employed as an L.P.N. for SHP at the Covington County Jail in Andalusia, Alabama. In late November 2005, she became medical team administrator. (Cain Aff. at ¶ 2.)

3.	SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of the plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, Dr. McWhorter was the medical director in the jail and Nurse Cain was the medical team administrator. (McWhorter Aff. at ¶ 4; Cain Aff. at ¶ 4.)

4.	When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is

provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (McWhorter Aff. at ¶ 5; Cain Aff. at ¶ 5.)

**B.     Chronology of the plaintiff's treatment**

5.     A true and correct copy of SHP's medical chart concerning the plaintiff is attached to Nurse Cain's Affidavit as Exhibit A. (Cain Aff. at ¶ 7.)

6.     The plaintiff, Larry Caldwell, is a white male, weighing 162 pounds, height 6'2" and date of birth October 22, 1960. He was booked November 27, 2005. ((McWhorter Aff. at ¶ 8; Cain Aff. at ¶ 8.)

7.     A medical screening was performed by Officer Jackson on November 28, 2005 in which no problems were identified. (McWhorter Aff. at ¶9; Cain Aff. at 9.)

8.     On December 5, 2005, the plaintiff completed his request for medical services complaining of eye problems and a cold. He was examined by Dianne Williams, LPN, who noted he had pre-existing eye problems and did not wish to be seen by an eye doctor. On that day he was started on CTM 4 mg for a cold for seven days per Dr. McWhorter's standing order. (McWhorter Aff. at ¶ 10; Cain Aff. at 10.)

9.     A complete admission history and physical was completed on December 18, 2005 by Joan Harrell, RN. She noted the plaintiff's family physician was Dr. Lance Dyess, Elba, Alabama. The plaintiff complained of problems with vision, headaches, hypertension, muscle problems and joint problems. His vital signs were pulse 72, blood pressure 120/80, temperature 97.4 and respirations 18. He indicated that he did not wear glasses but had poor vision in his right eye, perhaps related to a cataract. He complained of stiff knee joints and said he had a history of

4

hypertension, but was not on medication at this time. He also complained of a headache which he associated with the problems in the right eye. (McWhorter Aff. at ¶ 11; Cain Aff. at ¶ 11.)

    10. On December 20, 2005, the plaintiff completed a medical request form and complained of headaches and knee pain. At that time he was seen by Nurse Cain. He advised Nurse Cain that he had headaches in the right temporal area for three days that "come and go." The plaintiff associated the headaches with the eye problems. Nurse Cain noted a growth over the right cornea with the appearance of pterygium. A pterygium is a nonmalignant growth of the conjunctiva (overlying skin around the eye). The cause is unknown, but it is more frequent in people with excess outdoor exposure to sunlight and wind, such as those who work outdoors. The primary symptom of a pterygium is a painless area of elevated white tissue, with blood vessels on the inner or outer edge of the cornea. The plaintiff reported that it had been present for over a year. Nurse Cain also noted the plaintiff had swelling of the left knee. The plaintiff stated that it had locked up on him the day before, and he indicated that surgery had been recommended a year ago by Dr. Dyess. The plaintiff was started on Tylenol for 30 days per Dr. McWhorter's standing orders for the knee pain and for the headaches. (McWhorter Aff. at ¶ 12; Cain Aff. at ¶ 12.)

    11. The plaintiff completed a medical request form on December 23, 2005 and complained of an "eye problem." Nurse Cain examined him on December 26, 2005. His vital signs were checked and stable. He continued to complain of decreased vision in the right eye. Nurse Cain scheduled him to be seen by Dr. McWhorter and advised the plaintiff of this plan. (McWhorter Aff. at ¶ 13; Cain Aff. at ¶ 13.)

12. Dr. McWhorter examined the plaintiff on December 28, 2005. Dr. McWhorter noted the plaintiff's complaints of right eye problems and defects in his vision. Dr. McWhorter examined the plaintiff and found no gross abnormality. He assessed him as having "alleged eye pain" but prescribed no further medication. (McWhorter Aff. at ¶ 14; Cain Aff. at ¶ 14.)

13. On January 6, 2006, the plaintiff completed a medical request form and complained of problems with headaches and knee problems. Nurse Cain saw him on January 12, 2006, and noted his complaints of right temporal headaches unrelieved by Tylenol. Per Dr. McWhorter's standing orders, he was changed from Tylenol to Percogesic for 10 days. (McWhorter Aff. at ¶ 15; Cain Aff. at ¶ 15.)

14. On January 20, 2006, the plaintiff completed a medical request form for follow up on headaches and blood pressure check. Nurse Dianne Williams examined him on January 23, 2006. His vital signs were temperature 96.8, respirations 18, pulse 70 and blood pressure 118/80. His prescription for Percogesic was extended for 30 days per Dr. McWhorter's standing order. (McWhorter Aff. at ¶ 16; Cain Aff. at ¶ 16.)

15. On January 31, 2006, the plaintiff's blood pressure was checked and was 140/90. On February 1, 2006, the plaintiff was started on Maxzide for his blood pressure per standing order of Dr. McWhorter. A blood pressure record was started on January 31, 2006 per Dr. McWhorter's order to check the plaintiff's blood pressure daily for nine days and weekly and as needed thereafter. His blood pressure was checked on February 1, 3, 4, 5, 6, 11, 18, 27, March 4, 11, 26, April 1, 8, 16, 22, 29 and May 6, 2006. (McWhorter Aff. at ¶ 17; Cain Aff. at ¶ 17.)

16. On February 11, 2006, the plaintiff was given a decongestant for seven days per standing order of Dr. McWhorter. (McWhorter Aff. at ¶ 18; Cain Aff. at ¶ 18.)

17. On February 24, 2006, the plaintiff completed a medical request form for renewal of his medications. Nurse Williams examined him on February 24, 2006 and noted the plaintiff was there to renew his prescription for medication for chronic headaches. His vital signs were temperature 96.7, respirations 20, pulse 78 and blood pressure 130/88. His prescription for Percogesic was extended on that date. (McWhorter Aff. at ¶ 19; Cain Aff. at ¶ 19.)

18. On March 9, 2006, when Nurse Cain conducted the morning pill call, the plaintiff did not get up to receive his medication. Later during delivery of medication to other inmates, the plaintiff beat on the glass window to get Nurse Cain's attention. Nurse Cain advised the plaintiff that she would get back to him when she finished with where she was in the medication delivery routine. After Nurse Cain finished where she was in the routine, Nurse Cain went back to give the plaintiff his medications. At that time, the plaintiff threw his hands up and said "just forget it" and walked away and refused his medication. Officer Coleman witnessed this episode and wrote a note which is contained in the plaintiff's chart. (McWhorter Aff. at ¶ 20; Cain Aff. at ¶ 20.)

19. On March 15, 2006, the plaintiff was granted a nine day medical pass by a Covington County Circuit Judge to seek treatment for his eye condition. (McWhorter Aff. at ¶ 21; Cain Aff. at ¶ 21).

20. On April 3, 2006, the plaintiff related to Nurse Cain and Chief Deputy Walt Inabinett that he had seen Dr. Strong in Elba concerning his eye condition, and was informed by Dr. Strong that he could wait until he was discharged from jail to have surgery on his eye. The plaintiff refused to sign a medical release so that a copy of his medical records could be obtained from Dr. Strong. (McWhorter Aff. at ¶ 22; Cain Aff. at ¶ 22.)

21.     On April 18, 2006, the plaintiff completed a medical request form, complaining of headaches and a rash. Nurse Williams examined him on April 19, 2006, and he was continued on his medications. (McWhorter Aff. at ¶ 23; Cain Aff. at ¶ 23.)

22.     On April 24, 2006, the plaintiff was sent to Dr. Strong for a scheduled eye examination. On the transfer form, Dr. Strong noted his findings of benign pterygium, amblyopia (dimness of vision) and hyperopia (farsightedness) of the right eye and presbyopia (eye weakness associated with aging) of the left eye. He prescribed bifocal glasses which were ordered and provided to the plaintiff. (McWhorter Aff. at ¶ 24; Cain Aff. at ¶ 24.)

23.     On May 2, 2006, the plaintiff completed a medical request form for pain in his left shoulder for two or three days duration. He was seen by nurse Williams on May 3, 2006. His vital signs were temperature 97.5, respirations 24, pulse 84 and blood pressure 140/82. He was given a prescription of Robaxin for seven days per Dr. McWhorter's standing order. (McWhorter Aff. at ¶ 25; Cain Aff. at ¶ 25.)

C.  **Dr. McWhorter and Nurse Cain were not deliberately indifferent to the plaintiff's medical needs.**

24. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (McWhorter Aff. at ¶ 27; Cain Aff. at ¶ 27.)

25.     On no occasion was the plaintiff ever at risk of serious harm, nor were Dr. McWhorter or Nurse Cain ever indifferent to any complaint that he made. (McWhorter Aff. at ¶ 28; Cain Aff. at ¶ 28.)

D. **<u>The plaintiff failed to exhaust administrative remedies.</u>**

26. The plaintiff failed to file a claim with Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60, et. seq, prior to commencing this lawsuit.

VI. **LEGAL ARGUMENT**

A. **<u>The plaintiff's claims are barred by the Prison Litigation Reform Act for his failure to exhaust administrative remedies.</u>**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

The plaintiff in this case has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the plaintiff failed to exhaust all administrative remedies, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

9

**B.     The plaintiff's claims against Dr. McWhorter and Nurse Cain are due to be dismissed, because the plaintiff has presented no evidence that Defendants were deliberately indifferent to a serious medical condition.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

In addition, an inmate does not have a right to a *specific* kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court

10

should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that Dr. McWhorter or Nurse Cain acted with deliberate indifference to any serious medical need of the plaintiff. On the contrary, the plaintiff's medical chart clearly demonstrates that all of his medical needs were addressed in a timely and appropriate fashion. With regard to the plaintiff's allegation that Dr. McWhorter and Nurse Cain should have treated the plaintiff's right eye problems, the plaintiff has presented no evidence demonstrating that the plaintiff's right eye condition is one that was diagnosed by a physician as mandating treatment or that his problems were so obvious that even a lay person could recognize the necessity for medical attention. As such, his right eye complaints do not qualify as a "serious medical condition."

Moreover, even if his complaints did evidence a "serious medical condition," the testimony of Dr. McWhorter and Nurse Cain clearly demonstrate that the plaintiff was treated adequately for his right eye problems. The plaintiff received medication for his pain, was seen by an eye doctor (Dr.

Strong) for his complaints and was provided bifocal glasses consistent with Dr. Strong's orders. (See McWhorter and Cain Affs.) Both Dr. McWhorter and Nurse Cain have testified that all necessary care provided to the plaintiff was appropriate, timely and within the standard of care. (McWhorter Aff. at ¶ 27; Cain Aff. at ¶ 27.) The plaintiff has failed to present any evidence or medical testimony rebutting this testimony and, in fact, has presented no evidence that the treatment provided him by Dr. McWhorter and Nurse Cain was somehow indifferent to his needs.

## VII. REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants move this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in a light most favorable to the nonmovant, However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves,* 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic

circumlocutions, and the like need not be credited.'" *Marsh v. Butler County,* 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar,* 142 F.3d 26, 40 (1st Cir. 1998).

### B. Motion for Summary Judgment

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

*/s/ Robert N. Bailey*
Daniel F. Beasley
Robert N. Bailey, II

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

### CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of May, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott W. Gosnell, Esq.
Webb and Eley, P.C.
7475 Halcyon Pointe Road
P.O. Box 240909
Montgomery, AL 36124

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant:

Larry Caldwell
Covington County Jail
290 Hillcrest Drive
Andalusia, AL 36420

*/s/ Robert N. Bailey*
Of Counsel

13