# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| LARRY CALDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:06-CV-0207-WKW |
| | ) |
| ANTHONY CLARK, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF MILLARD McWHORTER, M.D.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Millard McWhorter, M.D.**, who, after first being duly sworn by me, deposes and states as follows:

1. My name is Millard McWhorter, M.D. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2. I obtained my medical degree from Meharry Medical College in Nashville, Tennessee in 1981. From 1981 to 1984, I performed a residency at Morehouse Family Practice Program at Southwest Community Hospital in Atlanta, Georgia. From January 1985 to May 1986, I was in private practice in Monticello, Georgia. From June 1986 to September 1992, I was the medical director at Red Level Medical Clinic in Red Level, Alabama. During this same timeframe, I was also a consultant to the Community Mental Health First Step Clinic for Alcohol and Drug Abuse in Red Level, Alabama. From September 1987 to April 1989, I was the chief of staff and medical director at Columbia Regional Medical Center in Andalusia, Alabama. From January 1989 to December 1992, I was a physician for Spectrum Emergency Services, where I worked in emergency

rooms in Georgia and Alabama. From October 1992 to December 1993, I was a staff physician for the Davis Medical Group in Huntsville, Alabama. From January 1994 to July 1999, I was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, I was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, I have been employed by Southern Health Partners, Inc. as the medical director of the Covington County Jail in Andalusia, Alabama, and I have also been in private practice in Andalusia, Alabama.

3. I am licensed to practice medicine in the State of Alabama and have been so since 1986. I am also licensed to practice medicine in the states of Georgia and Tennessee.

4. Southern Health Partners, Inc. (hereinafter SHP) provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of the plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, I was the medical director in the jail and Annette Cain was the medical team administrator.

5. When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

6. As I understand the plaintiff's complaint in this case, the plaintiff alleges that Nurse Cain and I denied the plaintiff medical attention by not treating the plaintiff's right eye complaints.

7. I have reviewed SHP's medical chart concerning the plaintiff.

8. The plaintiff, Larry Caldwell, is a white male, weighing 162 pounds, height 6'2" and date of birth October 22, 1960. He was booked November 27, 2005.

9. A medical screening was performed by Officer Jackson on November 28, 2005 in which no problems were identified.

10. On December 5, 2005, the plaintiff completed his request for medical services complaining of eye problems and a cold. He was examined by Dianne Williams, LPN, who noted he had pre-existing eye problems and did not wish to be seen by an eye doctor. On that day he was started on CTM 4 mg for a cold for seven days per my standing order.

11. A complete admission history and physical was completed on December 18, 2005 by Joan Harrell, RN. She noted the plaintiff's family physician was Dr. Lance Dyess, Elba, Alabama. The plaintiff complained of problems with vision, headaches, hypertension, muscle problems and joint problems. His vital signs were pulse 72, blood pressure 120/80, temperature 97.4 and respirations 18. He indicated that he did not wear glasses but had poor vision in his right eye, perhaps related to a cataract. He complained of stiff knee joints and said he had a history of hypertension, but was not on medication at this time. He also complained of a headache which he associated with the problems in the right eye.

12. On December 20, 2005, the plaintiff completed a medical request form and complained of headaches and knee pain. At that time he was seen by Nurse Cain. He advised Nurse Cain that he had headaches in the right temporal area for three days that "come and go." The plaintiff associated the headaches with the eye problems. Nurse Cain noted a growth over the right cornea with the appearance of pterygium. A pterygium is a nonmalignant growth of the conjunctiva (overlying skin around the eye). The cause is unknown, but it is more frequent in people with excess outdoor exposure to sunlight and wind, such as those who work outdoors. The primary symptom

of a pterygium is a painless area of elevated white tissue, with blood vessels on the inner or outer edge of the cornea. The plaintiff reported that it had been present for over a year. Nurse Cain also noted the plaintiff had swelling of the left knee. He stated that it had locked up on him the day before. He indicated that surgery had been recommended a year ago by Dr. Dyess. The plaintiff was started on Tylenol for 30 days per my standing orders for the knee pain and for the headaches.

13. The plaintiff completed a medical request form on December 23, 2005 and complained of an "eye problem." Nurse Cain examined him on December 26, 2005. His vital signs were checked and stable. He continued to complain of decreased vision in the right eye. Nurse Cain scheduled him to be seen by me and advised the plaintiff of this plan.

14. I examined the plaintiff on December 28, 2005. I noted his complaints of right eye problems and defects in his vision. I examined him and found no gross abnormality. I assessed him as having "alleged eye pain" but prescribed no further medication.

15. On January 6, 2006, the plaintiff completed a medical request form and complained of problems with headaches and knee problems. Nurse Cain saw him on January 12, 2006, and noted his complaints of right temporal headaches unrelieved by Tylenol. Per my standing orders, he was changed from Tylenol to Percogesic for 10 days.

16. On January 20, 2006, the plaintiff completed a medical request form for follow up on headaches and blood pressure check. Nurse Williams examined him on January 23, 2006. His vital signs were temperature 96.8, respirations 18, pulse 70 and blood pressure 118/80. His prescription for Percogesic was extended for 30 days per my standing order.

17. On January 31, 2006, the plaintiff's blood pressure was checked and was 140/90. On February 1, 2006, the plaintiff was started on Maxzide for his blood pressure per my standing order. A blood pressure record was started on January 31, 2006 per my order to check the plaintiff's blood

pressure daily for nine days and weekly and as needed thereafter. His blood pressure was checked on February 1, 3, 4, 5, 6, 11, 18, 27, March 4, 11, 26, April 1, 8, 16, 22, 29 and May 6, 2006.

18.   On February 11, 2006, the plaintiff was given a decongestant for seven days per my standing order.

19.   On February 24, 2006, the plaintiff completed a medical request form for renewal of his medications. Nurse Williams examined him on February 24, 2006 and noted he was there to renew his prescription for medication for chronic headaches. His vital signs were temperature 96.7, respirations 20, pulse 78 and blood pressure 130/88. His prescription for Percogesic was extended on that date.

20.   On March 9, 2006, when Nurse Cain conducted the morning pill call, the plaintiff did not get up to receive his medication. Later during delivery of medication to other inmates the plaintiff beat on the glass window to get Nurse Cain's attention. She advised him she would get back to him when she finished with where she was in the medication delivery routine. After Nurse Cain finished where she was in the routine, she went back to give the plaintiff his medications. At that time the plaintiff threw his hands up and said "just forget it" and walked away and refused his medication. Officer Coleman witnessed this episode and wrote a note which is contained in the plaintiff's chart.

21.   On March 15, 2006, the plaintiff was granted a nine day medical pass by a Covington County Circuit Judge to seek treatment for his eye condition.

22.   On April 3, 2006, the plaintiff related to Nurse Cain and Chief Deputy Walt Inabinett that he had seen Dr. Strong in Elba concerning his eye condition, and was informed by Dr. Strong that he could wait until he was discharged from jail to have surgery on his eye. The plaintiff refused to sign a medical release so that a copy of his medical records could be obtained from Dr. Strong.

23. On April 18, 2006, the plaintiff completed a medical request form, complaining of headaches and a rash. Nurse Williams examined him on April 19, 2006, and he was continued on his medications.

24. On April 24, 2006, the plaintiff was sent to Dr. Strong for a scheduled eye examination. On the transfer form Dr. Strong noted his findings of benign pterygium, amblyopia (dimness of vision) and hyperopia (farsightedness) of the right eye and presbyopia (eye weakness associated with aging) of the left eye. He prescribed bifocal glasses which were ordered and provided to the plaintiff.

25. On May 2, 2006, the plaintiff completed a medical request form for pain in his left shoulder for two or three days duration. He was seen by Nurse Williams on May 3, 2006. His vital signs were temperature 97.5, respirations 24, pulse 84 and blood pressure 140/82. He was given a prescription of Robaxin for seven days per my standing order.

26. All of the information contained herein is based upon my personal knowledge and the plaintiff's medical chart.

27. All necessary care provided to the plaintiff was appropriate, timely and within the standard of care.

28. On no occasion was the plaintiff ever at risk of serious harm, nor was I ever indifferent to any complaint that he made.

_____
Millard McWhorter, M.D.


STATE OF ALABAMA        )
                        )
COUNTY OF Covington     )

    I, the undersigned Notary Public in and for said county in said state, hereby certify that Millard McWhorter, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

    GIVEN UNDER MY HAND and official seal on this the 10th day of May, 2006.

_____
Notary Public
My Commission Expires: Feb. 2, 2008